June 15, 1908.

————o————

No. 4492.

(Court of Appeal, Parish of Orleans.)

E. M. VALLE, ADMINISTRATOR OF THE SUCCESSION OF GEORGE HOWARD, VS. VINCENT BOIDO.

1. When demands are made in the alternative the plaintiff will not be required to elect on the ground that they are inconsistent.
2. The issues of fact involved herein are resolved in favor of the defendant.

Appeal from Civil District Court, Division C.

J. E. Fleury, for Plaintiff and Appellee.

E. M. Cahn, for Defendant and Appellant.

ESTOPINAL, J. Plaintiff, in his petition, recites substantially that he was duly appointed and qualified as Administrator of

the Succession of George Howard by the District Court for the Parish of Jefferson; that there is located in that parish certain property belonging to said Succession, and more particularly a horse named "Fair Calypso," valued at Six Hundred Dollars ($600.00); that Vincent Boido, the defendant, has unlawful possession of said horse, and that, notwithstanding demand made upon the defendant on behalf of said succession, for possession of said horse, defendant refuses to deliver the same. Plaintiff then makes the statutory allegations for a writ of sequestration, and prays that after due proceedings there be judgment decreeing said horse, "Fair Calypso," to be the property of the succession of the late George Howard.

Defendant's answer urges alternatively:

First—That he owns the horse by virtue of a sale made to him by George Howard.

Second—That should the Court reach the conclusion that the contract was in the nature of a pledge, and not a sale, that he cannot then be divested of the possession of the property until he has been reimbursed certain sums set forth in his answer.

Third—That should the defenses urged above be held not to be good, then, and in that event, under the Codal provision, he has a privilege and right of pledge and detention, which entitles him to be reimbursed the sum claimed by him, before the horse can be taken from his possession.

The plaintiff sought to compel the defendant to elect which of the defenses he would stand on, urging their inconsistency, which was overruled by the Court below. The ruling was not error, the several defenses having been made in the alternative. 43 A. 308, 27 A, 98.

On the merits the judgment was for plaintiff, maintaining the writ of sequestration and decreeing the horse, "Fair Calypso," to be the property of the succession of George Howard, and also gave judgment in favor of defendant on his reconventional demand for Three Hundred and Thirty-six Dollars and Twenty Cents ($336.20), to be paid in due course of administration of the succession.

From this judgment the defendant prosecutes this appeal.

This record shows, and indeed this is not contested, that in the month of August, 1907, George Howard, a horse owner and follower of races, was indebted to the defendant, Vincent Boido, in the sum of approximately Three Hundred Dollars ($300.00);

that Howard, in order to liquidate this indebtedness to Boido, executed a bill of sale, dated at Detroit, Mich., August 13th, 1907. The following day Boido sold the horse to Howard, the bill of sale being passed at Windsor, Canada.

As before stated, in the first transfer from Howard to Boido, there was admittedly real and ample consideration, and every condition preceding and following this transaction shows it to have been earnest and entirely bona fide. On the other hand, the second transfer, that from Boido to Howard, was without consideration, and the conditions surrounding it, as, we think, convincingly shown by this record, amounts to no more than an accommodation to Howard by the defendant, who wished to assist him.

It is true that on its face the act does not import a conditional sale, but there was evidence introduced without objection in relation to this second transfer going to show that such transfer was made at the anxious solicitation of Howard, who wanted to run the horse in his own name, requesting Boido to give him some instrument evidencing his (Howard's) ownership. Neither Boido nor Howard knew in what way the matter could be arranged. Boido was willing to give Howard a chance to recoup himself with the race horse, and accordingly adopted the suggestion of some man, who advised a sale to Howard, the latter promising to pay his indebtedness to Boido or return the horse in three months from the date of the sale. As before noted, no consideration passed from Howard to Boido. Under this showing and events following subsequently, it is manifest that the second bill of sale was not a real bona fide sale, nor so intended to be, but was simply a permit or a license given Howard by Boido to use the race horse under certain conditions, proof of which is satisfactorily made in the record.

The learned counsel for plaintiff, whose conduct of this case has impressed us with his industry and ability, directs our attention to certain letters, the text of which, he contends, establish the validity and bona fide character of the transfer from Boido to Howard, executed in Canada on the 14th of August, 1907.

We are unable to adopt counsel's construction of these letters, but, on the contrary, we take the opposite view. In our opinion, they are only confirmatory of the conclusion, which we think inevitable, to-wit: That the sale to Boido was bona fide, and for

285

consideration, and that that to Howard amounted to a permit to the latter to use the horse for his benefit. If that were not so, what earthly concern could it be to Boido and his wife as to what disposition Howard should make of the horse after the alleged sale to him?

Boido writes Howard, saying: "My wife, she want you to send me a note where you agree to pay the trainer and feed yourself; I have nothing to do about the horse."

Counsel would contend that this amounts to an absolute relinquishment by Boido of any and all rights to this horse. We do not think it does. To our mind, what it does mean is that, Boido was unwilling to stand for any expense in connection with the horse, and would have nothing to do about it; in other words, that Howard should manage and race the horse on his own responsibility. Had the horse been concededly the property of Howard, is it reasonable to suppose that Boido or his wife would have made any such suggestions or given any such advice as is found in this record? We think not.

Boido, whose conduct in this entire matter impresses us as being a man of kindly and sympathetic disposition, and whose explanation of the transaction with Howard appears to be open and truthful, testifies that he visited Howard at the Charity Hospital at the latter's request to him by telephone to call, and that Howard said to him: "I don't think I will ever come out; you take the mare; it is yours. If I come out you will help me again." "I said yes, and he said," "the mare is yours."

In another part of his testimony, Boido says Howard told him: "I owe you that money, and I can't pay you. You go home and take the mare, and take giod care of her, and the mare is yours; but if I come out I will have everything straight with you," etc.

From this it is clear that Howard was actuated in making these declarations in reference to the horse because of his appreciation of the tenor and meaning of their earlier transactions. Witnesses have testified that Howard had stated to them that the horse belonged to Boido by virtue of a sale made to him, and that he (Howard) retained the horse in his possession with a view, if possible, of again becoming its owner.

A Doctor Harthill says that Howard told him in Canada that he was not the owner of the horse "Fair Calypso;" that Mr. Vincent Boido was the owner of it, and that he (Boido) would pay the doctor's bill for examination of the horse for lameness.

Now, coming down to a period subsequent to the death of George Howard, it is shown that Boido assumed and paid all claims incurred for attention and care to the horse, aggregating quite a sum. This fact evidences strongly the exercise of these acts as owner. Howard, at the time of his death, owed Boido over three hundred dollars ($300.00), in payment of which he had sold to the latter this horse, shown to be worth little, if more, than this sum; then why should Boido, if not the owner, spend an additional $100.00, or so, on the horse?

We deem it unnecessary to pursue this discussion further, satisfied as we are that this transaction was not a pledge, but an absolute sale conveying absolute ownership.

Considering the relations between the parties and their evident intention in this transaction, a fair and just adjudication must result in quieting the defendant in the possession of the property acquired by him bona fide.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment appealed from be and it is hereby reversed and set aside, and it is now ordered, adjudged and decreed that there be. judgment in favor of defendant dissolving and setting aside the writ of sequestration herein, and decreeing said defendant to be the owner of the horse "Fair Calypso," plaintiff to pay costs of both courts.